Opinion of the court by
Judge Catron.
The bill charges that Francis Anderson had been sued by Donaho and Brevard, in the Wilson county court, and in 1820, a judgment was recovered against him for $1900, from which he appealed, and complainants were his security to the circuit court for the appeal, and bound for the debt. Anderson owed Crockett and Adams largely, and on being pressed for a mortgage on the plantation and premises where he lived, to secure Crockett and Adams, re. fused to execute it, saying it would deprive him of the means of paying Donaho and Brevard’s debt, and the complainants, as his securities, would suffer. That Adams verbally promised to pay the debt of Donaho and Brevard, if Anderson was unable to do so, when the judgment was affirmed, so that the complainants, as securities of Anderson, should not suffer, if he would execute the mortgage, which he did. The complainants were compelled to pay the debt of 1900 dollars, and Crockett and Adams had foreclosed the mortgage, and applied the proceeds to their own use. It also appears by the decree,, that the land produced $4,000. This we presume was ascertained by an account taken before the master, which *347 is unexcepted to, from any thing appearing, and is a fact .in the cause.
Rodes and Kelly having paid the debt -of Donaho and Brevard, are substituted to their rights. Suppose the debt had not been paid by Rodes and Kelly to Donaho and Brevard, could the latter in equity compel Crockett and Adams to pay it them? And if Crockett, and Adams were bound to Anderson to pay.it, can Rodes and Kelly enforce the contract in equity?
This depends upon the contract between F. Anderson and Adams when the mortgage was executed. Did Adams, as a condition of the execution of the mortgage for the land, agree and bind Crockett and Adams to pay and satisfy the judgment of Donaho and Brevard, for and in behalf of Francis Anderson?
The bill charges the fact: Anderson so admits it in his answer. Adams admits in his answer, that he applied for the mortgage to secure the debt of Crockett and Adams; that Anderson objected to executing the same, alleging Rodes and Kelly were his securities in the appeal, and that he did not wish to encumber the lands, for fear it might injure them. Adams then offered to take an assignment of Anderson’s book accounts, to secure his debt. To this Anderson objected, saying he could best collect them himself. Adams then proposed that Anderson should mortgage the land, and if he should not be able to realize enough from the accounts to pay the debts complainants were bound for, Adams would, on the faith of the accounts, advance as much money to discharge the debt as Paulding Anderson would advance. Adams expressed it as his opinion at the time, that the judgment appealed from bound the land, as is shown by the evidence of Paulding Anderson; and he said if it was sold by virtue of the execution, he would buy it in, and maké his title by the mortgage good.
Banister Anderson says, that he thinks Adams said he thought the land sufficient to pay both debts, that of Crockett and Adams, and Donaho and Brevard. This is improbable.
*348 Adams said to Johnson he thought the land mortgaged ° worth considerably more than Donaho and Brevard’s debt.
Paulding Anderson also proves,'that shortly after the mortgage was executed, Adams obtained a note executed by Paulding to Francis Anderson for $5000, due 1st March 1821. On this ‡1220 had been paid by Paulding to F. Anderson, and a credit was endorsed — leaving to Adams $3780’.' $9000 worth of goods had been purchased of Crockett and Adams — $5000 worth of those were taken by Paulding the son, and the note given to Francis Anderson to secure the payment. This proof taken in con-nexion with the answer of Adams, leaves it somewhat doubtful what the contract was, although it was clear from this and other evidence, Francis Anderson intended to provide for the payment of the debt of Donaho and Brevard before he subjected his land to the payment of Crockett and Adams’ debt.
Sarah Ariderson proves, that on the morning before the mortgage was executed, she heard Francis Anderson tell Mr. Adams, that there was a judgment against himself and Rodos and Kelly, as his securities, and if he thought that judgment did not bind the land, he'would not sign the mortgage. Adams asked if there was any other judgment against him. Anderson answered, “Not at this time.” Mr. Adams then said if he would sign the mortgage, that when the judgment came against him, he would furnish money, if Francis Anderson was not prepared to pay it.
This evidence is confirmed by all the facts and circumstances in the record, and is to our minds conclusive, that as a part consideration of the land mortgaged, Crockett and Adams were to pay the debt of Donaho and Bre-vard, should Anderson not be prepared to pay it; and that the lien on the land in favor of Crockett and Adams by the mortgage, should abate so much. Having been bound to pay it by contract with Anderson, Rodes and Kelly, who did pay it, did so for Crockett and Adams, and may well come into .equity to enforce Anderson’s contract. It was the securing of a fund for the payment of a debt, by *349 the means of the principal debtor, and we bold it that the , ’ security can reach such fund, it matters not who the trustee, or cestui que trust is. West vs. Belcher, (5 Mun. 2 Call’s R. 125. 1 Johns. C. C. 119, 120. Suppose ett and Adams had been the creditors of Anderson for $2000, the land had been worth $4000, they had taken the land in discharge of their debt, and agreed to pay Doriaho and Brevard’s debt of $2000: Donaho and Bre-vard had forced their debt by execution from the securities; could Crockett and Adams have resisted the payment to the securities, substituted to all the rights (against the fund) of the creditor and principal debtor? Certainly not. How does this case differ? In no wise, save that the land was not equal in value to the debt of Crockett and Adams, yet their contract is equally binding on them.— This was a common case of one creditor obtaining part payment in property on the condition of furnishing money to relieve the debtor from a judgment involving innocent and suffering securities, to relieve whom, out of a fund secured to pay the debt by the means of the principal debt- or, a court of chancery has in no instance within our knowledge withholden its aid. Let the decree of the circuit court be affirmed.
G. S. Yerger for complainants.
F, B. Fogg & Gibbs for defendants.
Decree affirmed.